Filed 7/15/13  P. v. Lopez CA2/5
**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, | B244558 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA372129) |
| v. | |
| PASCUAL LOPEZ, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Kathleen Kennedy, Judge.  Affirmed.

Murray A. Rosenberg, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, and Paul M. Roadarmel, Jr., Supervising Deputy Attorney General, for Plaintiff and Respondent.

_____

After the trial court denied defendant and appellant Pascual Lopez's motion to suppress his confession as involuntary, the jury found defendant guilty of the attempted willful, deliberate, and premeditated murder of Terek Taylor in violation of Penal Code sections 664 and 187, subdivision (a).[1] The jury found true the allegation pursuant to section 186.22, subdivision (b)(1)(C) that the offense was committed for the benefit of a criminal street gang with the specific intent to promote criminal conduct by gang members. The jury found not true various allegations that defendant personally discharged a firearm in the commission of the offense. The court imposed a sentence of life with a minimum of 15 years in state prison. In this timely appeal from the judgment, defendant contends admission of the confession violated due process because the confession was involuntary. We affirm.

## PROCEEDINGS ON THE MOTION TO SUPPRESS

Defendant filed a motion to suppress statements he made to police detectives during a recorded, post-arrest interview on December 17, 2009. Defendant contended the statements were involuntary, in that he was 17 years old and his statements were procured by an implied promise that the police would release his father, brother, and cousin, who were in custody, if he confessed to his role in the shooting. In support of the motion, defendant submitted a stipulation of counsel and a transcript of the interview.

### Stipulation

At the time defendant gave the interview, his father and brother were under arrest, the father for possession of a firearm by a prohibited person in violation of section 12021, subdivision (a)(1) and the brother for possession for sale of marijuana in violation of Health and Safety Code section 11359. Defendant was 17 years old.

---

[1] All statutory references are to the Penal Code unless indicated otherwise.

2

## Interview Statements

A Los Angeles Police Department detective told defendant his cousin Luis was at the police station, the police investigation had revealed that Luis's car and defendant were involved in a drive-by shooting, and defendant was present at three separate shootings, including one on Chesapeake and one on 28th Street.  Defendant denied any role or knowledge.  "[Detective]:  Well, here's the deal, you want to sit here and act like you had nothing to do with it, fine.  That's fine.  But you know who's in here in jail?  Your dad.  Your dad, your brother, your cousin.  All because of you.  [¶]  [Defendant]: Because of me?  [¶]  [Detective]:  That's right.  Because you brought us to this.  This investigation brought us to you and you brought us to them and now they're all here.  [¶] [Defendant]:  Because of me?  [¶]  [Detective]:  Because of you.  So you should just be honest with us now and tell us what the deal is.  What happened?  Maybe there's an explanation.  Maybe there's something that you can tell us:  this is what happened.  [¶] [Defendant]:  That's crazy.  [¶]  [Detective]:  What's the deal?  [Defendant]:  It because -- you all over here because of me?  [Detective]:  Everybody is here because of you.  [¶] [Defendant]:  My cousin, my dad, and everybody is here because of me?  [Detective]: Yes.  Is that what you want?  [Defendant]:  No.  [¶]  [Detective]:  Well, why don't you be honest then?"

Defendant denied knowledge of the 28th Street shooting.  However, in connection with the Chesapeake shooting, he stated he and Toker were driving through "the Jungles,"[2] looking for P Stones gang members, but when they did not find any, defendant was dropped off at McDonald's.  While there, he received a telephone call from Toker, who told him Toker had "caught somebody."

The detective told defendant, "I think you're being honest.  I mean, at least partially honest.  You're kind of taking yourself out of the shooting and saying it was

---

[2]  The Jungles was the name of the territory of  the P Stone gang.  Defendant was a member of a rival gang.

somebody else.  I think you need to be completely honest for it to help you.  Otherwise, you know - - ."  Defendant denied Luis was involved in gang activities with him, denied knowing who fired the shots, and stated he and his brother never drove Luis's car.  "[Detective]:  Well, I think if you want to be completely honest, you should tell us everything now.  Because if we find out something later on, then it's going to be - - it's going to seem like you're just lying about everything.  [¶]  [Defendant]:  That's all I got to say.  On everything."

The detective told him to tell the truth.  "[J]ust tell the truth is what's going to help you.  The truth shall set you free.  It's true."  Defendant continued to insist he was dropped off before the shooting.  Defendant denied he was known as "Malo" but acknowledged the nickname when the police told him they knew that was his nickname.

Defendant then admitted his role, as follows.  The detective stated the police knew defendant was in the car when the shooting occurred.  "[Detective]:  Look, we know that you were in the car.  If you weren't the shooter, [well] that's fine.  Tell us the truth.  But if you were the shooter, tell us the truth too.  But I know you were in the car.  We know that.  [¶]  [Defendant]:  Yeah.  I was inside the car.  [¶]  [Detective]:  But - - I know you were in the car during the shooting.  That's why we want information.  What happened?  [¶]  [A second detective]:  Maybe there's a good reason for what happened, you know, a lot of people that walk around that hood are on patrol.  A lot of people walk around have guns too.  Who knows."  Defendant replied, "All right," and admitted he and his companions were driving in the Jungle looking for enemies and he was the driver.  When they saw a man getting out of a car, Toker asked the man where he was from and shot the man three times.  Defendant insisted his brother and cousin had nothing to do with it.

## Trial Court's Ruling on Motion to Suppress Involuntary Confession

On June 29, 2012, the trial court denied defendant's motion to suppress the confession as involuntary.  The court ruled the detective's statement to defendant—that the father, brother, and cousin were all in jail because of defendant so defendant should

4

just be honest and tell the police what happened—did not overcome defendant's will. "And it seems to me that from even the stipulation, the brother and the father were arrested for independent offenses for which there was probable cause for them to be arrested. That is, the two bricks of marijuana in the backpack of the brother and guns in the possession of a prohibited person who had a domestic violence prior conviction. [¶] . . . [¶] . . . [D]efendant's relatives would not have been arrested for those particular offenses [had the police not been in the home executing a search warrant for evidence of the drive-by shooting]. [¶] So what the officer says in the statement is true, but he doesn't say that the family members aren't guilty of those other crimes; he just kind of says, 'well, it is because of you that they are here.' But I don't see that that is coercive. [¶] He doesn't say, 'well, we are going to charge them if you don't tell us the truth' or 'we are going to release them if you do tell us the truth.' He doesn't say any of that. [¶] He just refers to the fact that basically that it is the activity concerning the defendant that led the police to arrest the brother and the father. [¶] And without any further evidence, I don't see that this statement should be suppressed on that basis as being involuntary." The recording and a transcript of the recording were admitted in evidence at trial.[3]

## DISCUSSION

Defendant contends admission of the interview violated due process, because his statements were coerced by an implied promise of leniency for his family members if he confessed. We disagree with the contention.

---

[3] The victim testified at trial that defendant shot him four times from the back seat of the car, with one bullet lodging in the victim's hip. Defendant presented an alibi defense.

## Standard of Review

"'In ruling on a motion to suppress, the trial court finds the historical facts, then determines whether the applicable rule of law has been violated. "We review the court's resolution of the factual inquiry under the deferential substantial-evidence standard. The ruling on whether the applicable law applies to the facts is a mixed question of law and fact that is subject to independent review. [Citation.]" (*People v. Saunders* (2006) 38 Cal.4th 1129, 1134[].)' ([*People v.*] *Hernandez* [(2008)] 45 Cal.4th [295,] 298-299.)" (*People v. Greenwood* (2010) 189 Cal.App.4th 742, 745-746.)

## Voluntariness Under Due Process

"An involuntary confession . . . is inadmissible under the due process clauses of both the Fourteenth Amendment [citation] and article I, sections 7 and 15 [of the California Constitution] [citations]." (*People v. Benson* (1990) 52 Cal. 3d 754, 778.) "If a suspect's statements had been obtained by 'techniques and methods offensive to due process,' [citation], or under circumstances in which the suspect clearly had no opportunity to exercise 'a free and unconstrained will,' [citation], the statements [are inadmissible in evidence]." (*Or. v. Elstad* (1985) 470 U.S. 298, 304.)

"'In general, a confession is considered voluntary "if the accused's decision to speak is entirely 'self-motivated' [citation], i.e., if he freely and voluntarily chooses to speak without 'any form of compulsion or promise of reward. . . .' [Citation.]" [Citation.] However, where a person in authority makes an express or clearly implied promise of leniency or advantage for the accused which is a motivating cause of the decision to confess, the confession is involuntary and inadmissible as a matter of law.' [Citation.] 'A confession is "obtained" by a promise within the proscription of both the federal and state due process guaranties if and only if inducement and statement are linked, as it were, by "proximate" causation. . . . The requisite causal connection between promise and confession must be more than "but for": causation-in-fact is

insufficient.' [Citation.] 'This rule raises two separate questions: was a promise of leniency either expressly made or implied, and if so, did that promise motivate the subject to speak?' [Citation.] To answer these questions '"an examination must be made of 'all the surrounding circumstances—both the characteristics of the accused and the details of the interrogation.'"' [Citation.]" (*People v. Tully* (2012) 54 Cal.4th 952, 985-986.)

"[M]erely advising a suspect that it would be better to tell the truth, when unaccompanied by either a threat or a promise, does not render a confession involuntary. [Citation.]" (*People v. Davis* (2009) 46 Cal.4th 539, 600.) "'[T]he ultimate issue of "voluntariness" is a legal question.' [Citations.]" (*Bobby v. Dixon* (2011) __ U.S. __ [132 S.Ct. 26, 30, 181 L.Ed.2d 328].)

## The Confession Was Voluntary

Defendant contends Detective Flores's statement—that, since defendant was responsible for his family members being in jail and he did not want them there, defendant should be honest now—was coercive because it implied his family would be given leniency if defendant confessed. Defendant is incorrect. As the trial court noted, the detective did not say, "'we are going to charge them if you don't tell us the truth,' or 'we are going to release them if you do tell us the truth.'" We agree with the trial court, as the import of the detective's statement was that after all the trouble defendant had caused his family, he should now be honest about his role. Moreover, the record of the suppression hearing contains no evidence defendant understood he could help his family if he confessed. He did not subsequently refer to this exchange or try to confirm the meaning of the detective's words. When he confessed he was the driver, he said nothing indicating he expected or had been promised leniency for his family. Further, the detective continued during the interview to urge defendant to tell the truth but did not again refer to the arrests. Finally, defendant responded to the detective's statement with a denial he was in the car when the drive-by shooting occurred. He did not confess his role as the driver until much later in the interview, after he was caught lying about his gang

moniker and after being told he was not being fully honest, his story made no sense, and his story was contradicted by other evidence. Thus, the detective's words were neither coercive nor the motivating cause of defendant's confession.

**DISPOSITION**

The judgment is affirmed.


KRIEGLER, J.


We concur:


TURNER, P. J.


O'NEILL, J.*

---

* Judge of the Ventura County Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

8