Filed 4/16/15  P. v. Saphieh CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

<table>
<tr><td>

THE PEOPLE,

    Plaintiff and Respondent,

        v.

OSAMA FAREED SAPHIEH,

    Defendant and Appellant.

</td><td>

F068528

(Super. Ct. No. VCF265544)


**OPINION**

</td></tr>
</table>

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Tulare County.  Joseph A. Kalashian, Judge.

Kurt David Hermansen, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez and Charity S. Whitney, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]      Before Levy, Acting P.J., Detjen, J. and Smith, J.

Following the denial of his motion to suppress evidence of marijuana, the odor of which an officer noticed during a traffic stop, defendant Osama Fareed Saphieh was convicted by no contest plea of transportation of marijuana (Health & Saf. Code, § 11360, subd. (a)). On appeal, he contends the trial court erred in denying his motion to suppress because the officer lacked reasonable suspicion of criminal activity when he made the stop. We affirm.

## FACTS

At the suppression hearing, Officer Hernandez testified that on March 21, 2012, he conducted a traffic stop of a Yukon sports utility vehicle driven by defendant because the vehicle was missing a front license plate, a violation of Vehicle Code section 5200.[1] The officer was driving in the opposite direction of defendant's vehicle when the officer noticed it was missing the front license plate. It was daylight and the officer had a clear view of the front of the vehicle when he made this determination. The officer turned around and followed defendant. The officer noticed that the back of the vehicle had a dealer placard on the back plate. This did not eliminate his suspicion because he knew it was common for criminals to use dealer plates to go undetected when they stole vehicles. The officer stopped the vehicle because he wanted to check the registration and make sure the vehicle was not stolen. He did not notice the temporary permit on the windshield until after he pulled the vehicle over.

Defense counsel argued at the hearing that *People v. Hernandez* (2008) 45 Cal.4th 295 (*Hernandez*) required the court to grant defendant's motion to suppress. The court, however, distinguished *Hernandez* on its facts, stating: "The distinction is, and the court reads it as the prosecution does, [the officer in this case] didn't see the temporary sticker in the window until after the detention. So the detention is lawful, and that's a distinction

---

[1]    All statutory references are to the Vehicle Code unless otherwise noted.

between the two cases.  In [*Hernandez*], it's clear the deputy saw it, and his stop was to check a temporary."

## **DISCUSSION**

In reviewing a suppression ruling, "we defer to the superior court's express and implied factual findings if they are supported by substantial evidence, [but] we exercise our independent judgment in determining the legality of a search on the facts so found." (*People v. Woods* (1999) 21 Cal.4th 668, 673-674.)  The legality of the stop and the admissibility of the evidence found as a result is assessed under federal constitutional standards.  (*People v. Lomax* (2010) 49 Cal.4th 530, 564, fn. 11.)

The Fourth Amendment protects against unreasonable searches and seizures. (U.S. Const., 4th Amend.; *Terry v. Ohio* (1968) 392 U.S. 1.)  "An individual operating or traveling in an automobile does not lose all reasonable expectation of privacy simply because the automobile and its use are subject to government regulation."  (*Delaware v. Prouse* (1979) 440 U.S. 648, 662.)  "The touchstone of the Fourth Amendment is reasonableness.  (*United States v. Knights* (2001) 534 U.S. 112, 118.)  Whether an officer's conduct was reasonable is evaluated on a case-by-case basis in light of the totality of the circumstances." (*In re Raymond C*. (2008) 45 Cal.4th 303, 307 (*Raymond C.*).)  "'A detention is reasonable under the Fourth Amendment when the detaining officer can point to specific articulable facts that, considered in light of the totality of the circumstances, provide some objective manifestation that the person detained may be involved in criminal activity.'  [Citation.]  Ordinary traffic stops are treated as investigatory detentions for which the officer must be able to articulate specific facts justifying the suspicion that a crime is being committed."  (*Raymond C., supra,* 45 Cal.4th at p. 307.)  When there is articulable and reasonable suspicion that a motorist is unlicensed, that an automobile is not registered, or that either the vehicle or an occupant is otherwise subject to seizure for violation of law, the vehicle may be stopped and the

driver detained in order to check his or her driver's license and the vehicle's registration. (*Delaware v. Prouse, supra,* 440 U.S. at pp. 662-663.)

California law generally requires that a car driven on the roadway display valid front and rear license plates. (§§ 5200, 5201.) The absence of a front license plate "has long been recognized as a legitimate basis for a traffic stop. [Citations.]" (*People v. Saunders* (2006) 38 Cal.4th 1129, 1136 (*Saunders*); § 5200.) A newly purchased car, however, may be driven for up to 90 days without license plates if it displays a copy of the dealership's report of sale form (temporary permit). (§ 4456, subds. (a) & (c)). The temporary permit is to be displayed in the *lower rear window*. But if it will be obscured in that position, it may be displayed in the lower right corner of the windshield or the lower right corner of a side window. (Cal. Dept. of Motor Veh., Vehicle Industry Registration Procedures Manual, ch. 6, § 6.020 (December 2009) <http://www.dmv.ca.gov/portal/wcm/connect/2e70a8c1-5c01-4d95-a0fa-3e577efa329d/ch6_new_vehicles_sold_by_california_dealers.pdf?MOD=AJPERES> [as of April 15, 2015]; see *Raymond C., supra*, 45 Cal.4th at p. 305.)

Defendant argues that his temporary permit was properly displayed on his windshield. "The question for us, though, is not whether [the] vehicle was in fact in full compliance with the law at the time of the stop, but whether [the officer] had '"articulable suspicion"' it was not. (*People v. Celis* (2004) 33 Cal.4th 667, 674; see generally *Illinois v. Rodriguez* (1990) 497 U.S. 177, 184 ['"reasonableness," with respect to this necessary element, does not demand that the government be factually correct in its assessment'].) The possibility of an innocent explanation for a missing front license plate does not preclude an officer from effecting a stop to investigate the ambiguity. (See *Illinois v. Wardlow* (2000) 528 U.S. 119, 125-126; accord, *People v. Leyba* (1981) 29 Cal.3d 591, 599.)" (*Saunders, supra,* 38 Cal.4th at pp. 1136-1137.) Thus, display of a temporary permit does not necessarily determine the legality of the stop.

In *Hernandez*, upon which defendant relies, the officer stopped a truck for having no license plates, even though he had seen a valid temporary permit on the back windshield. (*Hernandez, supra,* 45 Cal.4th at p. 297.) The court rejected the People's argument that the officer had acted reasonably because, in his experience, temporary permits were often forged or displayed on vehicles for which they were not issued. The court explained: "An officer who sees a vehicle displaying a temporary operating permit in lieu of license plates may not stop the vehicle simply because he or she believes that such permits are often forged or otherwise invalid. To support a stop the officer must have a reasonable suspicion that the particular permit is invalid. Otherwise, any car with such a permit could be stopped without particularized cause." (*Ibid.*)

In *Raymond C.*, a companion case to *Hernandez*, the Supreme Court made it clear that the existence of a valid temporary operating permit does not render a traffic stop unreasonable if it is not seen by the officer before making the stop. (*Raymond C., supra*, 45 Cal.4th at pp. 305-308.) The officer observed that the car driven by the minor did not have license plates or a temporary operating permit in the rear window, but he could not see whether a temporary permit was displayed in the windshield. (*Id*. at p. 305.) After he stopped the car, the officer was advised by the minor that the temporary permit was on the windshield. (*Ibid*.) The court upheld the traffic stop, distinguishing *Hernandez* as a case in which the officer saw a temporary permit, but disregarded it. (*Raymond C*., at p. 307.)

Similar facts were considered in *People v. Dotson* (2009) 179 Cal.App.4th 1045, in which the officer observed that a pickup truck was missing both front and rear license plates. Although a temporary operating permit had apparently been placed on the back window, the officer did not recall looking for or seeing such a permit. (*Id*. at pp. 1050-1051.) The court determined the traffic stop was legal notwithstanding the temporary operating permit: "Absence of license plates provides reasonable suspicion that the driver is violating the law. Unless there are other circumstances that dispel that

suspicion, that resolve any ambiguities in the legal status of the vehicle's conformance with applicable laws, the officer may stop the vehicle and investigate without violating the driver's Fourth Amendment rights. [Citation.] The uninvestigated chance that a temporary operating permit might be displayed somewhere on the vehicle is not such a dispelling circumstance." (*Id*. at p. 1052.)

The court in *People v. Greenwood* (2010) 189 Cal.App.4th 742 distilled the following rules from these and other cases: "In the absence of other incriminating or ambiguous evidence, a vehicle displaying a valid temporary permit and no license plates may not be stopped for the purpose of investigating the permit's validity. [Citations.] *If the officer does not see the temporary permit and the vehicle has no license plates, it is reasonable for the officer to make a traffic stop*. [Citation.] A vehicle with expired license tabs, but displaying a temporary permit, may not be stopped if the officer has additional information that there is an ongoing process to cure the lapse in registration. [Citation.] A vehicle displaying a valid temporary permit may be stopped where there is some objective indicia that something may be amiss with the registration or permit, such as a missing front license plate. [Citation.] Finally, a vehicle displaying no license plates and no temporary permit visible from the rear may be stopped for investigation. [Citation.]" (*Id.* at p. 748, italics added.)[2]

Defendant argues that the officer should have seen the temporary permit as he drove toward the vehicle and noticed the lack of a front license plate. The court expressly found, however, that the officer did not see the temporary permit until after he had detained defendant, and the officer's purpose was not to check the validity of the

---

[2] Defendant argues that an officer's reliance on a single fact—lack of a front license plate—would cast suspicion on a large number of innocent individuals who drive newly purchased vehicles with no front plate, a rear dealer placard, and a valid temporary permit. But as this discussion establishes, the reasonableness of an officer's actions in making a traffic stop depends on the totality of the circumstances.

temporary permit. We are bound by these findings because they are supported by substantial evidence. Because the officer did not see the temporary permit on the windshield before he made the traffic stop, the facts known to him at the time of the stop provided him with reasonable suspicion that defendant was operating his vehicle in violation of the Vehicle Code. The officer was entitled to detain defendant to investigate this possible violation, and the officer's subsequent discovery of the temporary permit did not render the initial stop a violation of the Fourth Amendment. Even if the vehicle was actually in compliance with the law, the stop was nevertheless lawful.[3]

## DISPOSITION

The judgment is affirmed.

---

**3** There was no evidence as to whether the officer *looked for* a temporary permit. He testified that he did not see one. We note that the temporary permit was not displayed in the preferred location on the rear window where, it seems to us, an officer effecting a traffic stop would be most likely to observe it.