Filed 3/18/15  P. v. Huntsberry CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D066332 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCE332867) |
| CRAIG HUNTSBERRY, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Laura W. Halgren, Judge.  Affirmed.

Laura R. Sheppard, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Eric A. Swenson and Allison V. Hawley, Deputy Attorneys General, for Plaintiff and Respondent.

This appeal arises from guilty pleas following the denial of a motion to suppress evidence pursuant to Penal Code[1] section 1538.5.  In this case we must determine if the officer's failure to more thoroughly investigate the status of a motorist's vehicle registration violated the Fourth Amendment.  We must also consider whether the exclusionary rule of the Fourth Amendment should be applied to the warrantless search of a cell phone where the search was conducted after our Supreme Court's decision in *People v. Diaz* (2011) 51 Cal.4th 84 (*Diaz*), but before the contrary decision by the United States Supreme Court in *Riley v. California* (2014) ___ U.S. ___ [134 S.Ct. 2473] (*Riley*).

We conclude the vehicle stop was reasonable under the totality of the circumstances of this case.  We will follow the guidance in *Davis v. United States* (2011) ___ U.S. ___ [131 S.Ct. 2419] (*Davis*) and decline to apply the exclusionary rule to the fruits of the unlawful search of the cell phone.[2]  We will therefore affirm the judgment of the trial court.

Following the denial of his motion to suppress evidence, Craig Huntsberry pleaded guilty to transportation of methamphetamine (Health & Saf. Code, § 11379, subd. (a)), possession of methamphetamine (Health & Saf. Code, § 11378), and driving under the influence of drugs (Veh. Code, § 23152, subd. (a)).

---

[1]     All further statutory references are to the Penal Code unless otherwise specified.

[2]     We are aware this issue is pending before our Supreme Court in *People v. Macabeo,* review granted November 25, 2014, S221852.  Pending a decision by our high court we must make our best effort to properly resolve this case

Huntsberry was sentenced to a term of six years, three of which to be served in custody and the balance to be served under mandatory supervision.

Huntsberry appeals contending the trial court erred in denying his motion to suppress evidence found after the stop of his car. We will reject his contentions and affirm.

STATEMENT OF FACTS

The facts set forth here are from the transcript of the motion to suppress evidence.

In the evening of August 16, 2013, San Diego Sheriff's Deputy Laudente Gallegos was conducting a traffic stop of a vehicle not involved in this case. When Huntsberry drove past, the deputy noticed the muffler seemed very loud. Gallegos was familiar with the type of car driven by Huntsberry and based on the sound believed the muffler had been modified in violation of the Vehicle Code.

Gallegos followed Huntsberry's car for about a mile. While doing so he ran a record check on the car's registration by means of the patrol car's computer terminal. As the response appeared on his computer screen, it indicated that the registration for the vehicle had expired. Before Gallegos could scroll through the rest of the Department of Motor Vehicle (DMV) report Huntsberry's car turned into a gas station. Gallegos then followed the car into the gas station.

When Gallegos approached the driver he observed symptoms of intoxication. In his discussion with the driver Gallegos learned the driver had a temporary registration permit as evidenced by a sticker placed on the top right hand corner of the rear window. Gallegos had not seen the sticker prior to the stop.

3

Huntsberry was arrested for driving under the influence. An inventory search of the car revealed two small bags of methamphetamine and narcotics paraphernalia.[3]

DISCUSSION

I

*THE CAR STOP*

Huntsberry contends the deputy did not have reasonable suspicion to justify the stop of his car. He argues the deputy's investigation of the registration prior to the stop was insufficient and that the deputy was legally mistaken regarding whether the loud muffler violated the Vehicle Code. We will deal with the contentions in order.

A. Legal Principles

When we review a trial court's decision on a motion to suppress evidence we follow a two-step process. We examine the trial court's factual determinations under the substantial evidence standard of review. We review the court's legal conclusions under the de novo or independent review standard. (*People v. Leyba* (1981) 29 Cal.3d 591, 596-597; *People v. Hernandez* (2008) 45 Cal.4th 295, 298-299.) Once we establish the historical facts we must determine whether the police conduct violated the Fourth Amendment.

The Fourth Amendment protects against unreasonable searches and seizures. (U.S Const., 4th Amend.; *Terry v. Ohio* (1968) 392 U.S. 1.) "A detention is reasonable under

---

[3]     Huntsberry does not challenge the probable cause for his arrest nor does he challenge the legitimacy of the discovery of evidence, other than on the basis of an illegal car stop and an illegal search of the cell phone without a warrant.

the Fourth Amendment when the detaining officer can point to specific articulable facts that, considered in light of the totality of the circumstances, provide some objective manifestation that the person to be detained may be involved in criminal activity." (*People v. Souza* (1994) 9 Cal.4th 224, 231.)

Traffic stops are treated as investigatory detentions for which the officer must be able to articulate specific facts justifying the suspicion that a crime is being committed. (*People v. Wells* (2006) 38 Cal.4th 1078, 1082-1083.)

Whether a police officer's conduct is reasonable under the Fourth Amendment is examined objectively, the officer's subjective motivation is constitutionally irrelevant. (*Brigham City, Utah v. Stuart* (2006) 547 U.S. 398, 404.)

Where an officer makes a traffic stop to investigate a potential Vehicle Code violation, the question presented is not whether the suspect is in fact guilty of a violation, but rather whether there were sufficient facts presented to the officer to justify a stop for purposes of investigation. (*People v. Greenwood* (2010) 189 Cal.App.4th 742, 750 (*Greenwood*).)

B. Investigation of the Vehicle's Registration

While Deputy Gallegos followed the car he attempted to run a DMV check on its registration. The first portion of the response reported the registration had expired. That was consistent with the expired tags on the license plate. The deputy's testimony, which was believed by the trial court, was that he did not get the opportunity to further scroll down the computer screen to the bottom of the report. Nor did he anticipate the bottom of the report would indicate a temporary registration had been issued. Huntsberry pulled

5

into the gas station and the deputy believed he should do his investigation then. Gallegos testified he did not see the temporary tag at the top of the rear window. Given that the stop was at night, the officer was driving, using the computer and watching the suspect car, the trial court could reasonably find Gallegos's testimony to be true.

In *In re Raymond C*. (2008) 45 Cal.4th 303, 305, the defendant was stopped by an officer who observed no license plates and no temporary tag. However, there was a temporary tag on the right front window, which the officer did not see. The court found the officer's stop to be reasonable. It found the officer did not need to exhaust all avenues of investigation of the registration in order to stop and investigate.

In *Greenwood, supra,* 189 Cal.App.4th 742, the court addressed a stop to investigate registration where there was a tag displayed, but officers believed the type of tag displayed was for a limited use that would not be applicable to the circumstances in that case. There the court found the officers had an objectively reasonable basis to conduct further investigation to clarify the validity of the car registration. (*Id.* at pp. 748-750.)

Huntsberry relies on *People v. Brendlin* (2006) 38 Cal.4th 1107, 1114, for the proposition that a stop to check registration, where a temporary permit is displayed is objectively unreasonable. *Brendlin* does not stand for that proposition. In that case police not only saw the permit, but also confirmed with DMV that valid registration was in progress. In *Brendlin,* the prosecution conceded the stop was unreasonable, but addressed the question of whether Brendlin, the passenger, had standing to complain. (*Ibid*.)

6

Based on the totality of the circumstances, we are satisfied that the deputy acted reasonably in stopping the car to investigate the status of the car's registration. The testimony, which was credited by the trial judge, shows the officer attempted to clarify the registration. He received information on the patrol car's computer that indicated the registration had expired. Before he could scroll down the computer screen further, the circumstances changed as the car pulled into the gas station. The officer had been looking at the license plate with expired tags, driving at night, and searching the computer all at the same time. It does not strain credulity that he reasonably did not see the tag in the upper right hand corner of the window.

As the court in *Greenwood, supra*, 189 Cal.App.4th at page 750 observed, the question is not whether Huntsberry was in fact in violation of the registration requirements, but whether on the facts presented to the deputy at the time he acted there were sufficient facts to warrant investigation. We believe there were such facts in this case.

## C. The Loud Muffler

Vehicle Code section 27151 (Modification of Exhaust Systems) prohibits modification of exhaust systems in a manner "which will amplify or increase the noise emitted . . . so that the vehicle is not in compliance" with Vehicle Code section 27150, which requires that mufflers be "properly maintained to prevent any excessive or unusual noise." Sound levels below 95 decibels comply with Vehicle Code section 27151.

Huntsberry contends the deputy acted unreasonably because he did not measure the decibel output of the car, thus could not have believed it violated the code. The issue

7

is whether "the facts and circumstances known to the officer support at least a reasonable suspicion that the driver violated the Vehicle Code or some other law." (*People v. Miranda* (1993) 17 Cal.App.4th 917, 926; *People v. Niebauer* (1989) 214 Cal.App.3d 1278, 1292.)

Gallegos testified he was personally familiar with the type and model of the car Huntsberry was driving. He was familiar with the sound of the stock muffler for that vehicle and, based on the noise, suspected the exhaust had been modified in an unlawful fashion.

As the court pointed out in *People v. Niebauer, supra,* 214 Cal.App.3d at page 1292, we expect officers to rely on their training and experience. They are not required to carry scientific equipment or demonstrate scientific expertise in order to investigate ordinary traffic violations. In this case it was the loud sound of Huntsberry's car, as it passed the deputy that attracted his attention. A sound loud enough, based on his experience, to suspect an unlawful modification of the car's exhaust system.

Recently in *Heien v. North Carolina* (2014) ___ U.S. ___ [135 S.Ct. 530], the United States Supreme Court addressed whether an officer automatically acts unreasonably when the officer is mistaken as to the applicable law. There the officer stopped a car for a defective tail light. The intermediate appellate court in North Carolina found the officer's interpretation to be incorrect. On review the high court concluded the test of the Fourth Amendment is reasonableness. The court, quoting *Brinegar v. United States* (1949) 338 U.S. 160, 176, said " 'the mistakes must be those of reasonable men.' " (*Heien, supra*, at p. 532.) The court went on to say " '[w]hen a probable cause

8

determination was based on reasonable but mistaken assumptions, the person subjected to a search or seizure has not necessarily been the victim of a constitutional violation.' " (*Id.* at p. 539, quoting *Herring v. United States* (2009) 555 U.S. 135, 139 (*Herring*).)

Whether or not Gallegos knew the decibel output of the exhaust when he stopped the car is irrelevant. Even if he was in error it appears from this record that he acted reasonably based upon his own observations, law enforcement experience and personal familiarity with the kind of car at issue. There was no Fourth Amendment violation in the decision to stop Huntsberry to investigate a loud muffler.

II

*THE EXCLUSIONARY RULE*

The People concede that the search of Huntsberry's cell phone was unlawful under *Riley, supra*, 134 S.Ct. 2473. It is argued, however, we should not apply the exclusionary rule to the search because the deputy relied in good faith on the California Supreme Court case of *Diaz, supra*, 51 Cal.4th 84, 101, which held such searches could be done incident to lawful arrest. The People contend we should follow the analysis of the Supreme Court in *Davis, supra,* 131 S.Ct. 2419, 2427-2428, and find the exclusionary rule should not apply in this case because the deputy reasonably relied on a decision of the California Supreme Court in conducting the search and thus he acted reasonably in reliance on existing law. Thus the deterrent effect of excluding evidence in such case would not justify the cost of the exclusion of probative evidence.

9

As we have noted we are aware our Supreme Court has granted review to consider these arguments, however, this case is before us now and we decline to put off consideration of the issue pending the Supreme Court's decision.

Since the exclusionary rule of the Fourth Amendment was first applied to the states in *Mapp v. Ohio* (1961) 367 U.S. 643, the Supreme Court has made a number of modifications to the rule. The court created the good faith exception to the rule in *United States v. Leon* (1984) 468 U.S. 897, 909-910. In *Leon* the court held that the purpose of the rule was to deter unlawful police behavior and that the rule is not an individual remedy for the person who has been the subject of an unreasonable search or seizure. (*Ibid.*) Later, in *Herring, supra,* 555 U.S. 135, the court said that "exclusion 'has always been our last resort, not our first impulse.' " (*Id.* at p. 140.) The court went on to say " '[t]he rule's costly toll upon truth-seeking and law enforcement objectives presents a high obstacle for those urging [its] application.' " (*Id.* at p. 141.)

In *Davis, supra,* 131 S.Ct. 2419, the court addressed the search of a car incident to arrest. The search was done after the decision in *New York v. Belton* (1981) 453 U.S. 454, and was done in compliance with *Belton.* However, while *Davis* was pending appeal, the court issued its opinion in *Arizona v. Gant* (2009) 556 U.S. 332, significantly narrowing the rule in *Belton.* Thus the search in *Davis* was in compliance with *Belton*, but unlawful under *Gant*. The court in *Davis* was required to decide whether the exclusionary rule should be applied to police behavior done in compliance with existing case law, but made unlawful by a subsequent decision. The court in *Davis* held application of the exclusionary rule was inappropriate. The officer acted in compliance

10

with existing law.  Therefore there was no deterrent value to exclusion of evidence which was properly seized at the time the officer acted.  (*Davis, supra,* at pp. 2427-2428.)

In *Herring* the court said that the exclusionary rule should not apply unless it could be said that " 'a reasonably well trained officer would have known the search was illegal.' "  (*Herring, supra*, 555 U.S. at p. 145.)

Huntsberry contends we should not apply the rule in *Davis, supra,* 131 S.Ct. 2419, in this case.  He argues that the California Supreme Court decision in *Diaz, supra*, 51 Cal.4th 84, was an "outlier" and not consistent with a proper application of Fourth Amendment analysis.  He notes there were dissenting opinions in *Diaz* and thus we should not treat the *Diaz* opinion as sufficiently reliable to justify the officer's actions which were consistent with the opinion.

First, we do not think it is the role of law enforcement officers to determine if the decisions of the highest court of the state are "outliers."  We think it is entirely reasonable for law enforcement to train their officers to follow the directions of our high court, until told otherwise.

Further, Huntsberry's position ignores the lessons of the United States Supreme Court in defining the proper scope of the rule of exclusion.  Exclusion is not a right of the individual and is not a personal remedy of an aggrieved person.  As the court has refined the rule and limited its purpose to deterring unlawful police behavior, it should not be applied to police actions done in reasonable, good faith reliance on established decisions of our highest courts.  Accordingly, we will affirm the decision of the trial court to deny suppression of the materials obtained in the search of the cell phone in this case.

11

DISPOSITION

The judgment is affirmed.


HUFFMAN, J.

WE CONCUR:


BENKE, Acting P. J.


O'ROURKE, J.