[No. C060310. Third Dist. Nov. 30, 2009.]

THE PEOPLE, Plaintiff and Respondent, v.
URBERTO DOTSON, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION*]**

---

*Pursuant to California Rules of Court, rule 8.1110, this opinion is certified for publication with the exception of part II.

## Counsel

Steven A. Torres, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Michael P. Farrell, Assistant Attorney General, Stephen G. Herndon and Joseph M. Cook, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**NICHOLSON, J.**—Defendant Urberto Dotson, a convicted felon, was found to be in possession of a firearm, ammunition, and methamphetamine when he was stopped in his vehicle by a peace officer. Defendant was also under the influence of a controlled substance at the time of the stop. After he was arrested and released on bail or his own recognizance, defendant committed a criminal offense in Sacramento County.

Convicted by a jury of several crimes and sentenced to state prison, defendant appeals. He contends that (1) the trial court erred by denying his motion to suppress the evidence obtained as a result of the vehicle stop and (2) the applicable statutes of limitations had run before the prosecution was commenced. We conclude that the trial court properly denied the motion to suppress. However, because we cannot tell from the record whether the prosecution was commenced within applicable limitations periods for the crimes, we must reverse and remand to the trial court for that determination.

### PROCEDURE

The district attorney filed an information charging defendant with six counts: count one, transportation of a controlled substance (Health & Saf. Code, § 11379, subd. (a)), with an allegation that he was personally armed

with a firearm (Pen. Code, § 12022, subd. (c)); count two, possession of a controlled substance (Health & Saf. Code, § 11377, subd. (a)); count three, possession of a firearm by a felon (Pen. Code, § 12021, subd. (a)(1)); count four, possession of ammunition by a felon (Pen. Code, § 12316, subd. (b)(1)); count five, being under the influence of a controlled substance while in possession of a firearm (Health & Saf. Code, § 11550, subd. (e)); and count six, being under the influence of a controlled substance, a misdemeanor (Health & Saf. Code, § 11550, subd. (a)). The information also alleged that defendant committed an offense while released on bail or his own recognizance in this case. (Pen. Code, § 12022.1, subd. (b).)

After the trial court denied defendant's suppression motion, a jury convicted defendant on counts three through six and found that he committed offenses while released on bail or his own recognizance. The jury was unable to reach verdicts on counts one and two.

At the time of his sentencing in this case, defendant was already serving time (six years) for the offense he committed in Sacramento County while he was released on bail or his own recognizance in this case. The trial court added two years eight months to that sentence for the crimes committed in this case, which included a consecutive eight months (one-third the middle term) for possession of a firearm by a felon (count three), a concurrent eight months (one-third the middle term) each for possession of ammunition by a felon (count four) and being under the influence of a controlled substance while in possession of a firearm (count five), a concurrent 180 days for being under the influence of a controlled substance (count six), and a consecutive two years for committing an offense while released on bail or his own recognizance. The total state prison term for the two cases was eight years eight months.

## DISCUSSION

### I

### *Motion to Suppress*

#### A. *Law Concerning Vehicle Stops*

"In ruling on a motion to suppress, the trial court finds the historical facts, then determines whether the applicable rule of law has been violated." (*People v. Hernandez* (2008) 45 Cal.4th 295, 298 [86 Cal.Rptr.3d 105,

196 P.3d 806] (*Hernandez*).) When we review the trial court's resolution of the motion to suppress, we "defer to the trial court's factual findings, express or implied, where supported by substantial evidence." (*People v. Glaser* (1995) 11 Cal.4th 354, 362 [45 Cal.Rptr.2d 425, 902 P.2d 729].) However, we exercise our independent judgment in determining whether the search or seizure was reasonable under the Fourth Amendment. (*Glaser*, at p. 362.)

■ The Fourth Amendment protects against unreasonable searches and seizures. (U.S. Const., 4th Amend.; *Terry v. Ohio* (1968) 392 U.S. 1, 20 [20 L.Ed.2d 889, 905, 88 S.Ct. 1868].) "A detention is reasonable under the Fourth Amendment when the detaining officer can point to specific articulable facts that, considered in light of the totality of the circumstances, provide some objective manifestation that the person detained may be involved in criminal activity." (*People v. Souza* (1994) 9 Cal.4th 224, 231 [36 Cal.Rptr.2d 569, 885 P.2d 982].) Traffic stops are investigatory detentions for which the officer must be able to articulate specific facts justifying the suspicion that a law is being violated. (*People v. Wells* (2006) 38 Cal.4th 1078, 1082–1083 [45 Cal.Rptr.3d 8, 136 P.3d 810].) An officer may make an investigatory stop if there is a reasonable suspicion that vehicle registration laws have been violated. (See *Hernandez, supra*, 45 Cal.4th at pp. 300–301; *People v. Saunders* (2006) 38 Cal.4th 1129, 1136 [45 Cal.Rptr.3d 66, 136 P.3d 859] (*Saunders*).)

■ "When two license plates are issued by the department for use upon a vehicle, they shall be attached to the vehicle for which they were issued, one in the front and the other in the rear." (Veh. Code, § 5200, subd. (a).) A vehicle is being operated legally despite missing license plates if a valid temporary operating permit is correctly displayed. (Veh. Code, §§ 4156, 5202.) The Vehicle Code does not explicitly provide for the placement of the temporary operating permit; however, it generally allows drivers to affix signs, stickers, and other materials in specified parts of the windshield or rear window. (Veh. Code, § 26708, subd. (b)(3).) The question for us is not whether the vehicle was in full compliance with the law at the time of the stop, but whether the officer had articulable suspicion that it was not. (*Saunders, supra*, 38 Cal.4th at p. 1136.)

In *Hernandez*, the California Supreme Court held that an officer violated the defendant's Fourth Amendment rights when he stopped the defendant's vehicle to investigate the registration of the vehicle even though the officer saw a temporary operating permit displayed in the window. (*Hernandez, supra*, 45 Cal.4th at pp. 298–299.) The officer stopped the defendant's vehicle

because the vehicle had no license plates. The officer discounted the presence of the temporary operating permit because, in his experience, such permits were often forged or otherwise invalid. (*Id.* at p. 298.) The *Hernandez* court held that the stop violated the Fourth Amendment because the circumstances leading to the stop did not support a reasonable suspicion that the defendant was violating a law. The officer's general belief that temporary operating permits are often forged or otherwise invalid was insufficient because the officer "could point to no articulable facts supporting a reasonable suspicion that [the defendant], in particular, may have been acting illegally." (45 Cal.4th at p. 299.)

In *Saunders*, a case decided before *Hernandez* and distinguished by the *Hernandez* court, an officer stopped a vehicle that displayed a rear license plate with an expired registration tag and a temporary operating permit but no front license plate. (*Saunders, supra*, 38 Cal.4th at p. 1132.) In that circumstance, the California Supreme Court held that the officer had articulable suspicion that the defendant was violating the law because the law generally requires a front license plate (Veh. Code, § 5200, subd. (a)) and "the lack of a front license plate has long been recognized as a legitimate basis for a traffic stop." (*Saunders, supra*, 38 Cal.4th at p. 1136; see also *Hernandez, supra*, 45 Cal.4th at p. 300 [distinguishing *Saunders* on its facts].)

### B. *Facts from the Suppression Hearing*

About 4:00 o'clock in the morning on January 21, 2005, Deputy Eric Bakulich of the Placer County Sheriff's Department was on patrol in the parking lot of the Thunder Valley Casino. The parking lot, in Deputy Bakulich's words, was "dark with the typical parking lot lights on." He noticed a 1993 Chevrolet pickup truck, with two male occupants, coming in his direction. He thought the vehicle was tan, but it may have been green.

Deputy Bakulich saw that the vehicle had no front license plate. After the vehicle passed, he saw that there was also no rear license plate. Based on the absence of license plates, Deputy Bakulich stopped the vehicle, contacted defendant, who was driving, determined that he was under the influence of a central nervous system stimulant, and arrested him. The stop, arrest, and subsequent search resulted in the charges of which defendant was convicted in this action.

During cross-examination, defense counsel asked Deputy Bakulich: "Did you look in the rear window of the pickup truck to determine if there was a

red temporary sticker?" He responded: "I don't recall if I specifically looked, but I don't recall if there was one or was not . . . at this time."[1]

## C. *Analysis*

Defendant contends that his stop is indistinguishable from the stop in *Hernandez*. He argues: "The bottom line is that there was no reasonable suspicion for stopping [defendant]. He had a valid registration in the window in accordance with the Vehicle Code." The Attorney General appropriately recognizes that defendant's testimony from trial that he displayed a "red sticker" in his rear window is immaterial to the discussion of whether the suppression motion was properly denied and, therefore, defendant's appellate contention that the stop violated his Fourth Amendment rights because he displayed a temporary operating permit is without merit. Nonetheless, the Attorney General attempts to concede the issue of the legality of the stop and agrees with defendant that "the exclusionary rule cannot be avoided." Defendant's contention, and the Attorney General's concession, are inconsistent with Fourth Amendment jurisprudence.

Applying the law to the facts from the suppression hearing, the officer's stop of defendant's vehicle was consistent with Fourth Amendment principles. Deputy Bakulich saw that defendant's vehicle did not have license plates. There was no evidence that he saw a temporary operating permit. Under these circumstances, Deputy Bakulich had reasonable, articulable suspicion that defendant was violating vehicle registration laws. Therefore, the stop did not violate defendant's Fourth Amendment rights. (*Hernandez, supra*, 45 Cal.4th at pp. 300–301; *Saunders, supra*, 38 Cal.4th at p. 1136.)

The Attorney General opines that the stop was not supported by articulable suspicion and that the fruits of the detention must be suppressed because, "[a]bsent evidence that [Deputy] Bakulich made a reasonable effort to determine the absence of a temporary operating permit in addition to absence of front and rear license plates, the People cannot meet their burden of showing that the warrantless traffic stop was reasonable." For this novel proposition that an officer must search the exterior of the vehicle for evidence of a temporary operating permit before stopping the vehicle, the Attorney General provides no authority. Instead, the law is to the contrary.

---

[1] In his appellate argument concerning the motion to suppress, defendant states that he testified that he had a "red sticker" in the rear window of the vehicle. This testimony is immaterial to our inquiry concerning the legality of the stop because it was not presented in the suppression hearing. (*Hernandez, supra*, 45 Cal.4th at p. 301; *People v. Tolliver* (2008) 160 Cal.App.4th 1231, 1237, fn. 9 [73 Cal.Rptr.3d 375].)

█ Absence of license plates provides reasonable suspicion that the driver is violating the law. Unless there are other circumstances that dispel that suspicion, that resolve any ambiguities in the legal status of the vehicle's conformance with applicable laws, the officer may stop the vehicle and investigate without violating the driver's Fourth Amendment rights. (*Saunders, supra*, 38 Cal.4th at p. 1136.) The uninvestigated chance that a temporary operating permit might be displayed somewhere on the vehicle is not such a dispelling circumstance.

█ Here, in a dimly lit parking lot, Deputy Bakulich had a hard time identifying even the color of the vehicle. He saw that there were no license plates, so he made the stop. The absence of license plates provided a reasonable basis upon which to form a suspicion that defendant was violating the law. Nothing in the facts presented at the suppression hearing dispelled that suspicion.

*Hernandez* does not support the Attorney General's facile position that Deputy Bakulich was required to conduct an exterior search for a temporary operating permit because that case is distinguishable on the material facts and the attendant legal analysis. In that case, the officer *saw* a temporary operating permit displayed in the rear window of the vehicle. The vehicle did not have license plates, but the suspicion that the driver was therefore violating the law was dispelled by the officer's observation of the temporary operating permit. (*Hernandez, supra*, 45 Cal.4th at p. 298.) The court held that the officer's generalized suspicion that temporary operating permits are often forged or otherwise invalid did not support particularized suspicion that the driver was violating the law. (*Id.* at p. 299.) Here, there was no evidence that defendant was displaying a temporary operating permit or, if he was, that Deputy Bakulich saw it in the dim light. Therefore, the suspicion raised by the absence of license plates was not dispelled.

We therefore conclude that the trial court properly denied defendant's motion to suppress the fruits of the vehicle stop.

II

*Statute of Limitations*[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

*[*]See footnote, *ante*, page 1045.

## DISPOSITION

The judgment is reversed. The action is remanded to the trial court for a hearing on the issue of whether the prosecution was commenced within the applicable statute of limitations as to each count. If the court finds that the statute of limitations had run on a count before the prosecution was commenced, the court is instructed to vacate the judgment as to that count. If the court finds that the statute of limitations had not yet run on a count when the prosecution was commenced, the trial court shall reinstate the judgment as to each such count.

Scotland, P. J., and Robie, J., concurred.

Appellant's petition for review by the Supreme Court was denied March 18, 2010, S179367. George, C. J., did not participate therein.