[No. B220315. Second Dist., Div. Five. Oct. 28, 2010.]

THE PEOPLE, Plaintiff and Respondent, v.
ALBERT GREENWOOD, Defendant and Appellant.

COUNSEL

Siri Shetty, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Keith H. Borjon and Joseph P. Lee, Deputy Attorneys General, for Plaintiff and Respondent.

---

OPINION

**KRIEGLER, J.**—Officers on patrol ran a computer check on a vehicle through the Department of Motor Vehicles (DMV) records, which indicated registration of the vehicle expired two years earlier. The vehicle had a temporary permit affixed to the rear window. The officers stopped the vehicle and discovered a phencyclidine cigarette. The trial court denied a motion to suppress the cigarette as a product of an unlawful vehicle stop, distinguishing *People v. Hernandez* (2008) 45 Cal.4th 295 [86 Cal.Rptr.3d 105, 196 P.3d 806] (*Hernandez*). We affirm on the basis that the report from the DMV that the registration was not current, without any mention of a valid temporary permit, justified the vehicle stop.

*Background*

Defendant and appellant Albert Greenwood was charged with possession of phencyclidine in violation of Health and Safety Code section 11377, subdivision (a). The information alleged five prior prison terms (Pen. Code, § 667.5, subd. (b)) and one prior conviction under the three strikes law (Pen. Code, §§ 1170.12, subds. (a)–(d), 667, subds. (b)–(i)). After denial of his motion to suppress the product of the vehicle stop under Penal Code section 1538.5, defendant entered a plea of no contest to the charged offense, admitted the prior conviction under the three strikes law, and was sentenced to state prison for 32 months.

In this timely appeal from the judgment, defendant argues the stop of his vehicle violated the Fourth Amendment.

*The Penal Code Section 1538.5 Hearing*

Officers James Moon and Ryan Marshall were on patrol on May 25, 2009, at 11:05 p.m. when they saw a vehicle driven by defendant. The officers ran a computer check of the DMV records on the license plate and learned the

registration expired in July 2007. The vehicle displayed a temporary operating permit with the number "5" (indicating it was for the month of May) affixed to the rear window. Officer Moon believed issuance of this type of sticker by the DMV allowed a vehicle owner to drive a vehicle only for the limited purpose of completing a smog check. Because of the late hour, the officer did not believe the car was being driven to complete a smog check. A traffic stop was effectuated, during which a cigarette dipped in phencyclidine was discovered and defendant was arrested. The temporary permit did not have any driving restriction stated on it.

Defendant testified he obtained the temporary permit sticker from the DMV three weeks before his arrest. The temporary permit allowed him to drive without limitation until the end of May, so he could complete his smog check during that month.

Based upon information obtained from the DMV by the prosecutor after the first day of the hearing on the motion to suppress evidence, the parties stipulated that defendant's temporary permit was valid and the DMV records showed the vehicle registration was suspended.

At the conclusion of the hearing, defendant argued the stop of his vehicle violated the Fourth Amendment because of the existence of the temporary permit sticker. The trial court ruled the officers acted reasonably, despite the presence of the temporary permit, because the information from the DMV indicated the registration on the vehicle lapsed in 2007. The court found the officers had the right to stop the vehicle to investigate whether it was lawfully driven.

*Discussion*

Defendant argues the traffic stop violated the Fourth Amendment prohibition against unreasonable searches and seizures. Defendant contends the stop was not objectively reasonable because the officers were aware of the temporary permit on the rear window of his car. He reasons the temporary permit is intended to signal that the motorist has complied with the registration requirement and a stop to conduct a general inquiry into registration is impermissible absent specific information the permit is invalid or fraudulent.

*Standard of Review*

"In ruling on a motion to suppress, the trial court finds the historical facts, then determines whether the applicable rule of law has been violated. 'We review the court's resolution of the factual inquiry under the deferential substantial-evidence standard. The ruling on whether the applicable law

applies to the facts is a mixed question of law and fact that is subject to independent review. [Citation.]' (*People v. Saunders* (2006) 38 Cal.4th 1129, 1134 [45 Cal.Rptr.3d 66, 136 P.3d 859] (*Saunders*).)" (*Hernandez, supra*, 45 Cal.4th at pp. 298–299.)

■ "The Fourth Amendment protects against unreasonable searches and seizures. (U.S. Const., 4th Amend.; *Terry v. Ohio* (1968) 392 U.S. 1 [20 L.Ed.2d 889, 88 S.Ct. 1868].) 'A detention is reasonable under the Fourth Amendment when the detaining officer can point to specific articulable facts that, considered in light of the totality of the circumstances, provide some objective manifestation that the person detained may be involved in criminal activity.' (*People v. Souza* (1994) 9 Cal.4th 224, 231 [36 Cal.Rptr.2d 569, 885 P.2d 982].) Ordinary traffic stops are treated as investigatory detentions for which the officer must be able to articulate specific facts justifying the suspicion that a crime is being committed. (*People v. Wells* (2006) 38 Cal.4th 1078, 1082–1083 [45 Cal.Rptr.3d 8, 136 P.3d 810]; *People v. Superior Court (Simon)* (1972) 7 Cal.3d 186, 200 [101 Cal.Rptr. 837, 496 P.2d 1205].)" (*Hernandez, supra*, 45 Cal.4th at p. 299.)

*Discussion*

Vehicle stops based on facts similar to those presented in this case have been the subject of a variety of recent cases. Based upon nuances in the facts, the cases have reached different conclusions as to the lawfulness of a vehicle stop.

In *People v. Brendlin* (2006) 38 Cal.4th 1107, 1114 [45 Cal.Rptr.3d 50, 136 P.3d 845] (*Brendlin*), vacated on other grounds in *Brendlin v. California* (2007) 551 U.S. 249 [168 L.Ed.2d 132, 127 S.Ct. 2400], a deputy "noticed that the registration tabs on the Buick's license plate were expired. However, he also observed a current temporary operating permit in the car's rear window and *had received radio confirmation that an application for renewal of the vehicle's registration was indeed in process.* Conceding that '[a] vehicle with an application for renewal of expired registration would be expected to have a temporary operating permit,' the Attorney General no longer argues that [the deputy] had articulable suspicion the Buick's registration was invalid." (*Brendlin, supra*, at p. 1114, italics added.) Thus, where a vehicle displays expired license plates, but also displays a temporary operating permit and it is confirmed that there is a process in place to renew the registration, a detention of the vehicle is inconsistent with the Fourth Amendment. (*Brendlin*, at p. 1114.)

Our Supreme Court returned to this subject in *People v. Saunders, supra*, 38 Cal.4th at page 1131 (*Saunders*), which involved a vehicle with no front

license plate, expired tabs on the rear license plate, and display of a current temporary operating permit. The court noted it had "not yet decided whether an officer may stop a vehicle that has an expired registration tab but also displays a temporary operating permit," and cases from other jurisdictions are divided. (*Id.* at p. 1135.) The *Saunders* court found no need to resolve that issue, because the lack of a front license plate provided reasonable grounds for the stop. The officer had no means of determining if the missing front license plate was excused by the temporary permit, other than to make a temporary stop for the purpose of investigation. (*Id.* at p. 1137.) In a footnote, the court observed that although the officer had not run a computer check of the registration, to do so would have been futile as there was evidence the temporary permit was not entered in the computer record of the DMV. (*Id.* at p. 1137, fn. 1.)

Defendant places his heaviest reliance on *Hernandez, supra,* 45 Cal.4th 295. In *Hernandez,* an officer saw the defendant driving a vehicle with no license plates but with a valid temporary permit in the rear window. In the officer's experience, temporary permits were often forged or switched for use from a different vehicle, so he made a traffic stop. The Supreme Court rejected the argument that the officer's subjective distrust of temporary permits justified the vehicle stop, noting that "[c]ourts from other jurisdictions also seem uniformly to have concluded that permitting officers to stop any car with temporary permits would be to countenance the exercise of the unbridled discretion condemned in *Delaware v. Prouse* [(1979)] 440 U.S. [648,] 663 [59 L.Ed.2d 660, 99 S.Ct. 1391]. [Citations.]" (*Hernandez, supra,* at p. 301; see *People v. Nabong* (2004) 115 Cal.App.4th Supp. 1, 3–5 [9 Cal.Rptr.3d 854] [stop of vehicle with expired license tags but displaying a valid permit, without any additional facts other than officer's distrust of the permit, violated the 4th Amend.].) The court distinguished *Saunders* on the basis the missing front license plate in *Saunders* justified the vehicle stop, and there was no similar violation in this case. (*Hernandez, supra,* at p. 300.)

The Supreme Court next addressed the issue in *In re Raymond C.* (2008) 45 Cal.4th 303 [86 Cal.Rptr.3d 110, 196 P.3d 810], a companion case to *Hernandez.* An officer saw a car without license plates; it had no temporary operating permit in the rear window. After making a vehicle stop, the officer discovered a temporary permit on the front window. (*In re Raymond C., supra,* at p. 305.) The stop was held to be lawful, because there was no permit in the officer's view from the rear and the officer was not constitutionally required to drive in front of the defendant to look for a permit on the front window before making the stop. (*Id.* at pp. 307–308.)

Finally, in *People v. Dotson* (2009) 179 Cal.App.4th 1045, 1050–1051 [101 Cal.Rptr.3d 897] (*Dotson*), an officer who saw no front or rear license plate

on a vehicle and did not look for a temporary permit made a vehicle stop. The Attorney General attempted to concede the stop violated the Fourth Amendment in the absence of evidence the officer attempted to determine if the vehicle had a temporary permit. The *Dotson* court rejected the concession as inconsistent with Fourth Amendment jurisprudence. (*Dotson*, at p. 1051.) In the view of the *Dotson* court, the stop was reasonable—the defendant's vehicle had no license plates, the officer saw no permit, and there was no evidence at the hearing on the motion to suppress that the temporary permit existed. *Hernandez, supra*, 45 Cal.4th 295 was distinguished because in *Hernandez*, the officer did see a temporary permit. (*Dotson, supra*, at p. 1052.) Review was denied in *Dotson*.

■ We distill the following rules from these cases. In the absence of other incriminating or ambiguous evidence, a vehicle displaying a valid temporary permit and no license plates may not be stopped for the purpose of investigating the permit's validity. (*Hernandez, supra*, 45 Cal.3d at pp. 299–300; *People v. Nabong, supra*, 115 Cal.App.4th at pp. Supp. 3–5.) If the officer does not see the temporary permit and the vehicle has no license plates, it is reasonable for the officer to make a traffic stop. (*Dotson, supra*, 179 Cal.App.4th at pp. 1051–1052.) A vehicle with expired license tabs, but displaying a temporary permit, may not be stopped if the officer has additional information that there is an ongoing process to cure the lapse in registration. (*Brendlin, supra*, 38 Cal.4th at p. 1114.) A vehicle displaying a valid temporary permit may be stopped where there is some objective indicia that something may be amiss with the registration or permit, such as a missing front license plate. (*Saunders, supra*, 38 Cal.4th at p. 1137.) Finally, a vehicle displaying no license plates and no temporary permit visible from the rear may be stopped for investigation. (*In re Raymond C., supra*, 45 Cal.4th at pp. 307–308.)

Our task is to determine where the stop in this case fits among these authorities. We agree with the trial court that the determinative fact in this case is that Officers Moon and Marshall objectively believed, based upon the DMV records, the registration on defendant's vehicle had lapsed two years earlier. This objective fact removes the stop from being dependent on Officer Moon's seemingly incorrect subjective belief that defendant's temporary permit only allowed him to drive the vehicle to obtain a smog check in order to gain current registration. (See Veh. Code, § 4156.)[1]

The only case in this series of decisions involving a computer search of registration records was *Brendlin*, but there, the check of records *confirmed*

---

[1] Vehicle Code section 4156 provides as follows: "(a) Notwithstanding any other provision of this code, and except as provided in subdivision (b), the department in its discretion may issue a temporary permit to operate a vehicle when a payment of fees has been accepted in an

the vehicle owner was in the process of completing the registration process, demonstrating the temporary permit was valid and there was no basis for a vehicle stop for further investigation. (*Brendlin, supra,* 38 Cal.4th at pp. 1111, 1114.) Here, there is no evidence that the computer check indicated defendant's temporary permit was part of the registration process. Presented with ambiguous evidence of a possible inconsistency between a registration that expired two years earlier and the temporary permit on display, a stop to investigate the status of the registration was consistent with the holding in *Saunders.*

To be clear, we do not decide this case based on Officer Moon's subjective belief the temporary permit only allowed the vehicle on the road for the limited purpose of obtaining a smog check—a belief that apparently has no basis in law. The reasonableness of a search under the Fourth Amendment is determined objectively, and an officer's subjective motivation is irrelevant to the constitutional issue. (*Brigham City v. Stuart* (2006) 547 U.S. 398, 404 [164 L.Ed.2d 650, 126 S.Ct. 1943], citing *Scott v. United States* (1978) 436 U.S. 128, 138 [56 L.Ed.2d 168, 98 S.Ct. 1717]; *Bond v. United States* (2000) 529 U.S. 334, 338, fn. 2 [146 L.Ed.2d 365, 120 S.Ct. 1462].) Officer Moon's subjective belief is little different from that of the officer in *Hernandez* that temporary permits are often forged or switched between vehicles—a hunch that provided an insufficient ground for a vehicle stop. But unlike the stop in *Hernandez,* the stop in this case was objectively reasonable based on the information received from the DMV.

■ It bears emphasis that it was not established until the middle of the hearing on the motion to suppress evidence—some six months after the vehicle stop in this case—that defendant's temporary permit was valid. The validity of the permit did not render the stop unreasonable. An innocent explanation for a possible registration violation "does not preclude an officer from effecting a stop to investigate the ambiguity." (*Saunders, supra,* 38

---

amount to be determined by, and paid to the department, by the owner or other person in lawful possession of the vehicle. The permit shall be subject to the terms and conditions, and shall be valid for the period of time, that the department shall deem appropriate under the circumstances.

"(b)(1) The department shall not issue a temporary permit pursuant to subdivision (a) to operate a vehicle for which a certificate of compliance is required pursuant to Section 4000.3, and for which that certificate of compliance has not been issued, unless the department is presented with sufficient evidence, as determined by the department, that the vehicle has failed its most recent smog check inspection.

"(2) Not more than one temporary permit may be issued pursuant to this subdivision to a vehicle owner in a two-year period.

"(3) A temporary permit issued pursuant to paragraph (1) is valid for either 60 days after the expiration of the registration of the vehicle or 60 days after the date that vehicle is removed from nonoperation, whichever is applicable at the time that the temporary permit is issued.

"(4) A temporary permit issued pursuant to paragraph (1) is subject to Section 9257.5."

Cal.4th at pp. 1136–1137, citing *Illinois v. Wardlow* (2000) 528 U.S. 119, 125–126 [145 L.Ed.2d 570, 120 S.Ct. 673] and *People v. Leyba* (1981) 29 Cal.3d 591, 599 [174 Cal.Rptr. 867, 629 P.2d 961].) The question is not whether defendant's vehicle was in compliance with the law, but whether Officers Moon and Marshall had an articulable suspicion it was not. (*Saunders, supra*, at p. 1136.) The DMV record showing expired registration provided the required articulable suspicion there was something amiss with the registration and justified the vehicle stop for Fourth Amendment purposes.

## DISPOSITION

The motion to suppress was properly denied. The judgment is affirmed.

Turner, P. J., and Armstrong, J., concurred.

Appellant's petition for review by the Supreme Court was denied February 16, 2011, S188800.