Filed 8/10/20

**CERTIFIED FOR PARTIAL PUBLICATION***

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br>v.<br><br>JOSHUA HARRELL,<br><br>        Defendant and Appellant. | A156017<br><br>(Solano County<br>Super. Ct. No. FCR336781) |

**INTRODUCTION**

A jury convicted Joshua Harrell of three felony counts of fraudulent possession of the personal identification of another after having been previously convicted of this offense. (Pen. Code, § 530.5, subd. (c)(2) (section 530.5(c)(2); all statutory references are to the Penal Code). Harrell makes three claims on appeal: (1) the judgment must be reversed because of the erroneous denial of his motion to suppress evidence; (2) his convictions must be reclassified as misdemeanors under section 490.2; and (3) four prior prison term enhancements must be stricken due to an amendment to section 667.5, subdivision (b) (section 667.5(b)).

After this court filed a nonpublished opinion accepting Harrell's contention that his convictions must be reclassified as misdemeanors, the California Supreme Court granted the People's petition for review. (*People v.*

---

* Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts I and II of the Discussion section.

1

*Harrell* (Feb. 11, 2020, No. S259968) ___Cal.5th___ [2020 Cal. Lexis 1112].) The Court then decided *People v. Jimenez* (2020) 9 Cal.5th 53 (*Jimenez*) and transferred Harrell's case back to this court with directions to vacate our prior decision and reconsider the cause in light of *Jimenez*.

In the published portion of the present opinion, we now reject Harrell's contention that his convictions for felony fraudulent possession of personal identifying information must be reclassified under section 490.2 as misdemeanors. Unpublished portions of the opinion affirm the denial of Harrell's suppression motion and conclude his section 667.5(b) enhancements must be stricken.

## BACKGROUND

In March 2018, Harrell was charged by felony complaint with three counts of violating section 530.5(c)(2). His motion to suppress evidence pursuant to section 1538.5, arguing that he was subjected to an unlawful detention, search, and arrest, was heard concurrently with the preliminary hearing on June 18, 2018.

At the June 18 hearing, Fairfield Police Officer Kevin Anderson testified that he encountered Harrell shortly before 3:00 a.m. on November 24, 2017. Anderson was patrolling a residential neighborhood when he noticed a gold BMW parked on the street that did not have license plates, which was a violation of the Vehicle Code. He approached the car so he could obtain the VIN number and noticed through the windows that Harrell was asleep in the driver's seat, with "a lot of miscellaneous property spread out throughout the car." Anderson attempted to wake Harrell by speaking through the window, which was rolled down about five inches, and by knocking on the window with his flashlight. When Harrell finally woke up, Anderson identified himself as police and asked Harrell to roll the window

down or open the door so it would be easier to talk. Harrell did not comply with that request or with the officer's request to see identification. He told Anderson that he did not want to talk and did not want to get out of the car. Anderson then asked for Harrell's name and date of birth, which Harrell provided.

Anderson testified that he used the information provided by Harrell to run a record check through Fairfield Police Dispatch and was advised that Harrell was on Post Release Community Supervision (PRCS). Accordingly, Anderson "removed [Harrell] from the car to conduct a PRCS compliance check of the vehicle." Anderson found notebooks and paperwork on the seats and floorboard of the car. The notebooks contained personal identifying information for approximately 20 people. After completing the car search, Anderson read Harrell his rights and placed him under arrest. Subsequently, Anderson contacted several people who were referenced in the notebooks found in the BMW, and they reported that Harrell did not have permission to have their personal information.

After Anderson completed his testimony, the People submitted documentary evidence regarding Harrell's prior conviction for identity theft, and the magistrate took judicial notice of the case in which Harrell had been placed on PRCS. The defense did not present evidence, but argued that the People failed to carry their burden of producing independent evidence establishing that Harrell was on PRCS or subject to a search condition. Defense counsel further argued that the detention was unlawful because Harrell was not doing anything wrong and was not obligated to engage with the officer even if he was on PRCS. Finally, defense counsel argued that the search of Harrell's phone was not justified because the People did not produce evidence regarding the scope of the PRCS search clause.

3

The magistrate denied Harrell's suppression motion, finding: "The initial contact was supported by reasonable suspicion. The arrest was supported by probable cause. The detention was not unduly prolonged." The magistrate also found sufficient evidence to support the identity theft charges and held Harrell to answer on the complaint.

In the superior court, Harrell filed a renewed motion to suppress evidence. On August 13, 2018, the court denied Harrell's motion, finding a sufficient factual basis for the magistrate's conclusions. Thereafter, the case proceeded to trial, where the jury found Harrell guilty of three felony counts of acquiring or keeping the personal identifying information of K.H., T.S. and C.W. after having previously suffered a conviction for this same crime. (§ 530.5(c)(2).) The trial court chose the upper term on count one as the base term and ran the other two terms consecutive; found that Harrell suffered a prior strike conviction and four prior prison terms; and sentenced him to an aggregate term of 12 years and 8 months in prison.

## DISCUSSION

## I. The Denial of Harrell's Suppression Motion Was Not Error

Harrell contends the judgment must be reversed because illegally seized evidence was used to secure his convictions.

Our standard of review is well established. A criminal defendant may "challenge the reasonableness of a search or seizure by making a motion to suppress at the preliminary hearing. [Citation.] If the defendant is unsuccessful at the preliminary hearing, he or she may raise the search and seizure matter before the superior court under the standards governing a section 995 motion." (*People v. McDonald* (2006) 137 Cal.App.4th 521, 528–529 (*McDonald*).) On appeal, we too review the determination of the magistrate at the preliminary hearing. (*Id*. at p. 529.) We accept all factual

4

findings supported by substantial evidence. Then we exercise independent judgment to determine whether the search or seizure was reasonable on the facts found by the magistrate. (*Ibid*.; see also *People v. Romeo* (2015) 240 Cal.App.4th 931, 940.)

We begin with Harrell's contention that his detention was unjustified. "A police officer may detain a person if the officer has a reasonable articulable suspicion that the detainee is or is about to be engaged in criminal activity." (*McDonald, supra*, 137 Cal.App.4th at p. 530.) "[W]hen there is articulable and reasonable suspicion that a motorist is unlicensed, that an automobile is not registered, or that either the vehicle or an occupant is otherwise subject to seizure for violation of law, the vehicle may be stopped and the driver detained in order to check his or her driver's license and the vehicle's registration." (*People v. Saunders* (2006) 38 Cal.4th 1129, 1135 (*Saunders*).)

Accepting, for purposes of appeal, Harrell's contention that he was detained as soon as Officer Anderson woke him and asked for identification, the record shows that Officer Anderson had a reasonable, articulable suspicion to detain Harrell because he was sleeping in a car parked on a public street that did not have license plates. "Absence of license plates provides reasonable suspicion that the driver is violating the law. Unless there are other circumstances that dispel that suspicion, that resolve any ambiguities in the legal status of the vehicle's conformance with applicable laws, the officer may stop the vehicle and investigate without violating the driver's Fourth Amendment rights." (*People v. Dotson* (2009) 179 Cal.App.4th 1045, 1052; see also *Saunders, supra*, 38 Cal.4th at p. 1136.) Here, the officer's initial interaction with Harrell revealed circumstances that reinforced an objective suspicion that Harrell was engaged in unlawful

5

activity because Harrell declined to provide identification demonstrating his lawful possession of the BMW.

Harrell also disputes the magistrate's conclusion that the vehicle search was lawful. However, substantial evidence that Officer Anderson knew Harrell was on PRCS justifies the vehicle search. "[A]n individual who has been released from custody under PRCS is subject to search (and detention incident thereto) so long as the officer knows the individual is on PRCS. PRCS, like parole, involves the post-incarceration supervision of individuals whose crimes were serious enough to result in a prison sentence and thereby implicates important public safety concerns, as well as the state's ' " 'overwhelming' " ' interest in supervising released inmates." (*People v. Douglas* (2015) 240 Cal.App.4th 855, 865 (*Douglas*).)

In this case, before Officer Anderson ordered Harrell to get out of the vehicle, he was accurately informed by the police department's dispatch officer that Harrell was on PRCS until 2020. Contrary to Harrell's lower court argument, the precise terms of Harrell's PRCS release are not relevant to our evaluation of the propriety of the search. "It is not necessary for the officer to recite or for the People to prove the precise terms of release, for the search condition is imposed by law, not by consent. As in the case of a parole search, an officer's knowledge that the individual is on PRCS is equivalent to knowledge that he or she is subject to a search condition." (*Douglas*, *supra,* 240 Cal.App.4th at p. 865.)

Harrell contends that the search executed by Anderson was nevertheless unlawful because it was conducted to harass him. The Legislature has explicitly stated that PRCS status does not "authorize law enforcement officers to conduct searches for the sole purpose of harassment." (§ 3067, subd. (d).) Despite the fact that the law does not require

6

particularized suspicion to conduct a search pursuant to a properly imposed search condition, such a search may be unreasonable if it is conducted " 'too often, or at an unreasonable hour, or if it [is] unreasonably prolonged or for other reasons establishing arbitrary or oppressive conduct by the searching officer.' " (*People v. Reyes* (1998) 19 Cal.4th 743, 753–754 [addressing a parole search condition].)

Here, the record contains substantial evidence that Officer Anderson approached the BMW because of a Vehicle Code violation, that Harrell declined to provide information establishing his right to possess the unlicensed vehicle in which he was sleeping, and that Officer Anderson conducted a search of the vehicle because he was informed that Harrell was on PRCS and subject to a statutory search condition. These facts constitute objective justification for the officer's conduct and establish that the search was not conducted for the purpose of harassment.

## II. The Prior Prison-Term Sentence Enhancements Must Be Stricken

Next, we consider Harrell's contention that his four one-year enhancements must be stricken pursuant to a recent amendment to section 667.5(b).

When Harrell's sentence was imposed, former section 667.5(b) provided that where a defendant is convicted of a felony and sentenced to prison, "in addition and consecutive to any other sentence therefor, the court shall impose a one-year term for each prior separate prison term or county jail term imposed under subdivision (h) of Section 1170 or when sentence is not suspended for any felony . . . ." Effective January 1, 2020, section 667.5(b) was amended to enhance punishment only for prior prison terms served "for a sexually violent offense as defined in subdivision (b) of Section 6600 of the Welfare and Institutions Code . . . ." Here, none of Harrell's prior prison

7

terms were for sexually violent offenses.  Therefore, if he had been sentenced under the amended statute, the court could not have imposed the four one-year sentence enhancements.

In appellate briefs filed before January 2020, Harrell argued the amendment to section 667.5(b) applied retroactively to him because it would go into effect before the judgment in his case became final.  (Citing *In Re Estrada* (1965) 63 Cal.2d 740 (*Estrada*).)  The People argued (erroneously) that this claim was not ripe for review, but conceded (correctly) that once the amendment went into effect, it would apply retroactively to defendants whose judgments were not yet final.

The *Estrada* rule provides, " 'when a statute mitigating punishment becomes effective after the commission of the prohibited act but before final judgment the lesser punishment provided by the new law should be imposed in the absence of an express statement to the contrary by the Legislature.' " (*People v. Woods* (2018) 19 Cal.App.5th 1080, 1090.)  "[F]or the purpose of determining retroactive application of an amendment to a criminal statute, a judgment is not final until the time for petitioning for a writ of certiorari in the United States Supreme Court has passed." (*People v. Vieira* (2005) 35 Cal.4th 264, 306.)  Thus, the judgment in this case is not final, and Harrell is entitled to the benefit of amended section 667.5(b).  The sentence enhancements previously imposed pursuant to this statute must be stricken.

## III.  Harrell's Felony Convictions May Not Be Reclassified As Theft Offenses

Harrell contends that Proposition 47 requires this court to reclassify his felony convictions as misdemeanor thefts under section 490.2. Proposition 47 "reduced the punishment for certain theft- and drug-related offenses, making them punishable as misdemeanors rather than felonies.  To

8

that end, Proposition 47 amended or added several statutory provisions, including new . . . section 490.2, which provides that 'obtaining any property by theft' is petty theft and is to be punished as a misdemeanor if the value of the property taken is $950 or less." (*People v. Page* (2017) 3 Cal.5th 1175, 1179.)

Here, Harrell's felony convictions were for violating section 530.5(c)(2), which we will conclude is not a theft offense. Section 530.5(c)(2) states: "Every person who, with the *intent to defraud*, *acquires or retains* possession of the personal identifying information . . . of another person, and who has previously been convicted of a violation of this section, . . . shall be punished" by imprisonment and/or a fine. (Italics added.) The crime is a "wobbler," in that it can be punished "by imprisonment in a county jail not to exceed one year, or . . . by imprisonment pursuant to subdivision (h) of Section 1170." (§ 530.5(c)(2).) Harrell contends that his violations of this law must be reclassified pursuant to Proposition 47 as misdemeanors because they are theft offenses, and there is no evidence that the value of the personal identifying information that Harrell acquired or retained exceeded $950.

When we filed our prior opinion in this case, courts disagreed about whether a violation of section 530.5(c) is a theft offense that must be treated as a misdemeanor when the value of the personal identifying information is not shown to exceed $950. (Compare *People v. Chatman* (2019) 33 Cal.App.5th 60, 65–69 (*Chatman*), rev. granted June 26, 2019, S255235 [a conviction under section 530.5(c)(2) is a theft offense] with *People v. Weir* (2019) 33 Cal.App.5th 868 (*Weir*), rev. granted June 26, 2019, S255212 [a violation of section 530.5(c) is a nontheft offense].) Until the Supreme Court resolved the conflict, we elected to follow our division's prior decision in *Chatman*, reclassifying Harrell's crimes as misdemeanor thefts. The

9

Supreme Court has now directed us to reconsider our conclusion in light of *Jimenez.*

In *Jimenez, supra*, 9 Cal.5th 53, the defendant was tried on charges that he committed two felony violations of section 530.5, subdivision (a) (section 530.5(a)), a closely related crime. Section 530.5(a) provides: "Every person who *willfully obtains* personal identifying information . . . of another person, and *uses* that information *for any unlawful purpose*, including to obtain, or attempt to obtain, credit, goods, services, real property, or medical information *without the consent* of that person, is guilty of a public offense . . . ." (Italics added.) The prosecution presented evidence that Mr. Jimenez went into a commercial check-cashing store on two occasions and cashed a check for an amount under $950. Neither check had been issued by the payor, nor did the payor give Jimenez permission to cash them. (*Jimenez*, at p. 59.) The jury found Jimenez guilty of both felony charges, but the trial court reclassified the crimes as shoplifting misdemeanors. Section 459.5, which was enacted pursuant to Proposition 47, defines shoplifting as "entering a commercial establishment with intent to commit larceny while that establishment is open during regular business hours, where the value of the property that is taken or intended to be taken does not exceed" $950. (§ 459.5, subd. (a).) This statute also precludes acts that can be charged as shoplifting from being charged as burglary or theft of the same property. (*Id.*, at subd. (b).) The judgment reclassifying *Jimenez*'s convictions as misdemeanor shoplifting was affirmed on appeal but reversed by our Supreme Court.

*Jimenez* holds that misuse of identifying information in violation of section 530.5(a) cannot be reclassified as shoplifting because section 530.5(a) is not a theft offense. (*Jimenez, supra*, 9 Cal.5th at pp. 58–59.) *Jimenez*

10

outlines several reasons that the crime is not a theft offense, even though it is sometimes referred to as "identity theft." First, the statutory language does not use the term "theft" or contain requirements that are central to the crime of theft. (*Jimenez, supra*, 9 Cal.5th at p. 63.) For example, it does not require an intent permanently to deprive the victim of any form of property. Indeed, "the offense of misuse of personal identifying information can be accomplished by acquiring the information with valid consent, using it for an unlawful purpose, and returning it." (*Ibid*.) Simply stated, Section 530.5(a) can be violated whether or not the victim's identifying information has been stolen.

The gravamen of section 530.5 is directed at unlawful use of a person's identity, not at unlawful taking of property. (*Jimenez, supra*, 9 Cal.5th. at p. 64.) The historical development of this statute and its many amendments reflect legislative efforts to address various " 'ripples of harm' that 'flow from the initial misappropriation' of identifying information—harm that often goes 'well beyond the actual property obtained.' " (*Id*. at p. 64 [quoting Sen. Com. on Public Safety, Analysis of Assem. Bill No. 2886 (2005–2006 Reg. Sess.) as amended May 26, 2006].) A felony violation of the statute hinges on the seriousness of the crime and its consequences for the victim, rather than the type or value of property involved. (*Jimenez*, at p. 64, citing *Weir, supra*, 33 Cal.App.5th at p. 875.) And, section 530.5 appears in a Penal Code chapter entitled " 'False Personation and Cheats,' " rather than in the chapter entitled " 'Larceny.' " (*Jimenez,* at p. 64.)

Finally, the new theft offense of shoplifting is "ill suited to punish misuse of identifying information" because these two laws are fundamentally different, reflecting different legislative rationales. (*Jimenez, supra*, 9 Cal.5th at p. 65.) The rationale for misdemeanor shoplifting is that

11

culpability for an unlawful taking of property should reflect degrees of danger that depend on the time of day, nature of the entry, and value of the property involved. By contrast, section 530.5 "prohibits a person from 'acquiring, retaining, or using information, rather than taking it,'—itself a fair indicator that the Legislature was concerned with use, not theft. [Citation.] And on its face, it addresses harms reaching well beyond theft, implicating issues of privacy and control of personal data." (*Jimenez,* at p. 65.)

In the present case, Harrell was convicted under section 530(c), a provision directed at unlawfully *possessing* (acquiring or retaining) personal identifying information, unlike the *Jimenez* defendant who was convicted for *misusing* such information. Contending that *Jimenez* does not preclude reclassifying his offenses as thefts, Harrell argues that the *Jimenez* Court limited its holding to section 530.5(a), and that the Court's reasoning does not extend to section 530.5(c), which is a fundamentally different crime. We disagree.

*Jimenez* compels the conclusion that section 530.5(c) is not a theft offense. Beginning with its statutory language, section 530.5(c) contains no reference to theft, nor do its elements align with a quintessential theft offense. Like section 530.5(a), this provision can be violated absent an intent to commit theft and whether or not the victim's information was actually stolen. Further, section 530.5(c) is an integral part of the statutory scheme that targets social harms flowing from the misuse of a person's identity, as opposed to the unlawful taking of property. Operating outside the law of theft, section 530.5 addresses unique concerns attendant to misuse of another person's identity. Subdivisions (a) and (c) of this statute function in tandem to achieve this purpose.

12

Insisting that *Jimenez* does not preclude reclassification of his crimes, Harrell hangs his hat on two flawed arguments. First, Harrell argues that *Jimenez* does not categorically foreclose defendants convicted under section 530.5 from obtaining relief under Proposition 47. As support for this view, Harrell cites section 530.5, subdivision (e) (section 530.5(e)), which provides that a person "who commits mail theft, as defined in Section 1708 of Title 18 of the United States Code, is guilty of a public offense." But section 530.5(e) is not at issue in this appeal, and Harrell's assumption that section 530.5(e) is a theft offense does not justify differentiating section 530.5(c) from section 530.5(a) in this regard. Under the relevant criteria outlined in *Jimenez*, subdivisions (a) and (c) of section 530.5 are both nontheft offenses, implemented by the Legislature as part of a comprehensive solution to problems arising from misuse of another person's identity.

Harrell's second contention is that section 530.5(c) must be characterized as a theft under the reasoning of *People v. Romanowski* (2017) 2 Cal.5th 903 (*Romanowski*). That case considered the effect of Proposition 47 on a felony conviction for violating section 484e, subdivision (d) (section 484e(d)), which criminalizes the theft of access card information. Section 484e(d) states: "Every person who *acquires or retains* possession of access card account information with respect to an access card validly issued to another person, *without the cardholder's or issuer's consent*, with the *intent to use it fraudulently*, is guilty of grand theft." (Italics added.) Concluding that section 484e(d) is a theft offense under Proposition 47, the *Romanowski* Court found, "[i]n just about every way available, the Legislature made clear that theft of access card information is a theft crime." (*Romanowski*, at p. 908.) For example, the statutory language describes this crime as " 'grand theft,' " and section 484e is located in a chapter of the Penal Code entitled

" 'Larceny.' " (*Ibid*.)  Furthermore, section 484e(d) is defined "in the way the Penal Code defines 'theft' " because this statute cannot be violated unless the victim's access card information is acquired or retained " 'without the cardholder's or issuer's consent.' " (*Romanowski*, at p. 912.)

As the *Jimenez* court observed, the same factors that indicate section 484e(d) is a theft offense establish that section 530.5(a) is not.  (*Jimenez, supra*, 9 Cal.4th at p. 65, 67.)  This observation applies as well to section 530.5(c), which also does not use the term theft, is not designated as a larceny in the Penal Code, and is not defined the way the Penal Code defines theft. We acknowledge that section 530.5(c), like section 484e(d), criminalizes one who "acquires or retains" information with fraudulent intent, but observe that section 530.5(c) does not include the additional requirement in section 484e(d) that this information be acquired without consent.  *Romanowski* understood "without . . . consent" as a "crucial element" confirming "that theft of access card information is a 'theft' crime in the way the Penal Code defines 'theft.' " (*Jimenez, supra*, 2 Cal.5th at p. 912.)  *Romanowski* thus reinforces our conclusion that section 530.5(c) is not subject to reclassification as a misdemeanor under the reasoning of *Jimenez*.

## DISPOSITION

The judgment is affirmed, except that the section 667.5(b) sentence enhancements are stricken.

14

_____
TUCHER, J.


WE CONCUR:


_____
STREETER, Acting P. J.


_____
BROWN, J.


_People v. Harrell_ (A156017)

15

Trial Court:                    Solano County Superior Court

Trial Judge:                  Hon. R. Michael Smith

Counsel for Appellant:      Carlo Andreani

Counsel for Respondents:   Xavier Becerra, Attorney General; Lance E. Winters, Chief Assistant Attorney General; Jeffrey M. Laurence, Senior Assistant Attorney General; Seth K. Schalit, Supervising Deputy Attorney General; Lisa Ashley Ott, Deputy Attorney General