Filed 9/19/25  P. v. Fuimaono CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br>v.<br><br>IRVING BABE FUIMAONO,<br><br>    Defendant and Appellant. | A169855<br><br><br>(Solano County<br>Super. Ct. No. FCR364669) |

Defendant Irving Babe Fuimaono appeals from a judgment entered after he pleaded no contest to one count of possession of a firearm by a felon (Pen. Code, § 29800, subd. (a)(1)).  Defendant was stopped after a police officer observed his vehicle displaying a temporary license plate that returned a "not on file" result in California databases.  Only after defendant was detained did the officer notice that the plate was issued in Texas, information he testified he could not see at the time of the stop.

The sole issue on appeal is whether the trial court erred in denying defendant's motion to suppress evidence obtained during the traffic stop. Defendant contends that the good faith exception to the exclusionary rule does not apply because the traffic stop was unsupported by reasonable suspicion and the officer's mistaken belief about the temporary license plate was not objectively reasonable.  We find this record demonstrates that the

1

officer acted on an objectively reasonable mistake of fact. Therefore, the good faith exception to the exclusionary rule applies, and we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On July 25, 2022, the Solano County District Attorney filed a complaint charging defendant Irving Babe Fuimaono with possession of a firearm by a felon under Penal Code section 29800, subdivision (a)(1). Before trial, defendant moved to suppress the firearm evidence obtained during the traffic stop.

At the suppression hearing, Suisun City Police Officer Tyler Camigi testified that around midnight on July 21, 2022, he observed a silver van with a temporary, paper license plate driving in front of him. He did not observe any moving violations committed by the driver of the silver van. Officer Camigi testified that he "quite often" saw temporary California license plates but that he did "not often" see temporary license plates from other states. He noticed that the temporary plate had less detail than a typical California plate, and he suspected that the van might have been stolen.

Officer Camigi provided the temporary license plate number to dispatch, requesting that it be checked through California databases. Dispatch then informed Officer Camigi that the plate number "was a record not on file." Relying on this information, Officer Camigi stopped the van and asked the driver for his name, driver's license, and vehicle registration. The driver, later identified as the defendant, provided his name and stated that he was on parole. He did not provide, however, the requested documents.

Officer Camigi verified through dispatch that the defendant was on postrelease community supervision (PRCS) and was not a licensed driver. Officer Camigi then directed the defendant to exit the vehicle for a

compliance search. Defendant reached toward the floorboard. Officer Camigi removed defendant from the vehicle, and his partner found a handgun in defendant's sweatshirt pocket. The defendant was placed under arrest. Only after the arrest, when Officer Camigi was "within 5 feet" of the license plate, did he notice that the temporary license plate said, "Texas dealer plate," above the number in smaller letters. Officer Camigi could not see those identifying words from the patrol car at the time that he initiated the traffic stop. He then had dispatch check Texas records.[1]

The trial court denied suppression, finding the stop lawful by a preponderance of the evidence. The court explained: "Even though it was [a] mistaken belief by the officer[,] . . . the fact [is] there's a mistake, there's a good faith mistake of fact, which appears to be an objective, reasonable one[. I]t generally does not invalidate a search that comes after the stop. And in this case, that's what happened." The court further noted: "It was not until after the officer—the defendant was detained when the officer had an opportunity to see the license—the temporary license plate that it was realized that it was out of Texas. The officer was not aware of that when he conducted the stop that was the detention." The court also added that "even if the Court were to find that it was not [reasonable suspicion], it would be an attenuation of fact that the defendant was on searchable release under PRCS."[2]

---

[1] The record does not include the results of the search of the Texas database.

[2] After the trial court denied the suppression motion, the defendant moved for reconsideration under Penal Code section 1538.5, subdivision (h), arguing that the court did not consider *People v. McWilliams* (2023) 14 Cal.5th 429, which held that the officer's discretionary decision to conduct a parole search of a defendant did not attenuate the connection between the officer's official, initial, unlawful decision to detain the defendant and the

Defendant pleaded no contest to possession of a firearm by a felon (Pen. Code, § 29800, subd. (a)(1)), and, on February 14, 2024, was sentenced to two years in prison. The defendant timely appealed, challenging the denial of his motion to suppress.

## DISCUSSION

We review the denial of a motion to suppress under a mixed standard of review. The trial court's findings of fact are reviewed for substantial evidence while its application of the law to those facts is reviewed de novo. (*People v. Hernandez* (2008) 45 Cal.4th 295, 298–299 (*Hernandez*).)

### I.   *Legal Principles*

The Fourth Amendment requires that investigative stops be supported by reasonable suspicion that a law has been violated. (*Terry v. Ohio* (1968) 392 U.S. 1, 21–23 [20 L.Ed.2d 889]; *United States v. Cortez* (1981) 449 U.S. 411, 417–418 [66 L.Ed.2d 621].) The reasonable suspicion standard requires officers to point to " ' "specific articulable facts that, considered in light of the totality of the circumstances, provide some objective manifestation" ' " that criminal activity is afoot. (*People v. Suff* (2014) 58 Cal.4th 1013, 1053–1054.)

The California Supreme Court has considered whether reasonable suspicion exists to stop vehicles displaying temporary registration permits. In *People v. Saunders* (2006) 38 Cal.4th 1129, the court upheld a stop in which a vehicle displayed both expired registration tabs and a current temporary operating permit. (*Id.* at pp. 1132–1133, 1135–1136.) The court

---

discovery of contraband. (*McWilliams*, at p. 434.) The defendant here argued that *McWilliams* undermined the trial court's reliance on the defendant's PRCS status as attenuating the stop. The court denied the reconsideration motion, noting that *McWilliams* was decided five months prior to the suppression hearing and no new evidence was presented. On appeal, the People do not argue that the attenuation doctrine applies.

4

reasoned that such an ambiguous situation provided the officer with objective grounds for initiating a traffic stop to investigate since he had no other ready means of determining whether the vehicle was in compliance with the law. (*Id.* at pp. 1131, 1136–1137.)  However, stops cannot rest solely on the general belief that temporary tags are often fraudulent; officers must identify articulable facts particular to the driver.  (*Hernandez, supra*, 45 Cal.4th at p. 299.)  In *Hernandez*, the Supreme Court found a stop unlawful when the officer detained a vehicle displaying a temporary operating permit solely because, in his experience, such permits were " 'very often' " forged.  (*Id.* at pp. 297–298.)  The officer observed no traffic violations, noted nothing irregular about the permit, and made no attempt to verify the permit's validity before initiating the stop.  (*Id.* at p. 298.)  The court held that without specific facts suggesting that the particular permit was invalid, the stop violated the Fourth Amendment.  (*Id.* at pp. 297, 300.)

Even when a detention exceeds constitutional bounds, however, the exclusionary rule does not automatically require suppression of resulting evidence.  The exclusionary rule is " 'a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved.' "  (*United States v. Leon* (1984) 468 U.S. 897, 906 [82 L.Ed.2d 677] (*Leon*), quoting *United States v. Calandra* (1974) 414 U.S. 338, 348 [38 L.Ed.2d 561].)  In *Leon*, the United States Supreme Court established the good faith exception to the exclusionary rule.  (*Leon, supra*, 468 U.S. at p. 905.)  There, evidence was obtained when the police executed a search warrant issued by a magistrate that was later found to lack probable cause.  (*Id.* at pp. 900–903.)  Our highest court held that the exclusionary rule does not apply when investigating officers act in "objectively reasonable reliance" on a warrant

later determined to be invalid.  (*Id*. at p. 922.)  The Supreme Court reasoned that the exclusionary rule is unwarranted " '[w]here the official action was pursued in complete good faith,' " as suppression would serve little deterrent purpose.  (*Id*. at p. 919.)

*Herring v. United States* (2009) 555 U.S. 135, 143–144 [172 L.Ed.2d 496] (*Herring*) clarified the culpability threshold required to justify exclusion. In *Herring*, police officers arrested the defendant based on a belief that he had an outstanding warrant, which was later found to have been recalled five months earlier.  (*Id*. at pp. 137–138.)  The erroneous warrant information stemmed from a negligent failure by another department to update its records.  (*Ibid.*)  The court rejected application of the exclusionary rule because this good faith mistake was the result of "isolated negligence attenuated from the arrest" and not "deliberate, reckless, or grossly negligent conduct . . . ."  (*Id*. at pp. 137, 144.)  The court emphasized a culpability-based standard, explaining, "To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system."  (*Id*. at p. 144.)  The court thus concluded that exclusion is inappropriate when the officer's conduct, although mistaken, is not so blameworthy as to justify the social cost of suppression.  (*Ibid.*)

## II. *The Good Faith Exception to the Exclusionary Rule Applies*

The record shows that Officer Camigi misread the out-of-state plate and mistakenly relied solely on a search of California databases.  There is no indication that his actions were anything other than in good faith.  (*Herring, supra*, 555 U.S. at pp. 135, 143–144.)

Defendant argues that *Herring* is distinguishable because the error there resulted from another agency's clerical oversight, whereas here Officer

6

Camigi both created and relied on the mistaken information. However, we do not find this factual distinction dispositive on this record. Although the error arose from Officer Camigi's own misjudgment, the record does not suggest conduct rising to the level of culpability required under *Herring*. (*Herring, supra*, 555 U.S. at p. 144.) The Supreme Court has declined to apply the exclusionary rule to such isolated negligence, reserving suppression for the kind of "flagrant" misconduct present in foundational exclusionary rule cases. (See *Herring, supra*, 555 U.S. at pp. 143–146, citing *Weeks v. United States* (1914) 232 U.S. 383 [58 L.Ed. 652] [warrantless home entry and repeated seizures]; *Silverthorne Lumber Co. v. United States* (1920) 251 U.S. 385 [64 L.Ed. 319] [unauthorized office raid]; *Mapp v. Ohio* (1961) 367 U.S. 643 [6 L.Ed.2d 1081] [forced entry with false warrant and invasive search].)

Officer Camigi's failure to request a multi-state database search for the temporary plate—while arguably negligent—does not rise to the level of recklessness or gross negligence. (*Herring, supra*, 555 U.S. at pp. 141, 144.) Based on prior experiences, Officer Camigi knew that individuals sometimes fabricated temporary plates or used them on stolen vehicles. As such, he then attempted to confirm the plate's status through dispatch and received a "not on file" result. From his patrol car, he could not discern the small print identifying the issuing state and only realized it was a Texas plate after the detention, when he was approximately five feet away from the vehicle. Moreover, nothing in the record suggests that broader database checks were standard practice or readily accessible at the time. Under these circumstances, Officer Camigi's conduct resembles the kind of isolated, nonculpable mistake that remains within *Herring*'s protective scope.

Although exclusion may deter similar lapses in investigative judgment, that rationale does not fully reflect the culpability-focused standard

governing the good faith exception in *Herring*. Here, the cost of exclusion would be substantial. The firearm was the sole evidence supporting a felony charge of possession by a felon. Suppressing the gun would eliminate the basis for prosecution of a serious offense involving public safety, without yielding any appreciable deterrent benefit. As the Supreme Court emphasized in *Herring*, the exclusionary rule is a " 'last resort,' " not a " 'first impulse,' " and should not be applied when the benefit is marginal and the social cost is high. (*Herring, supra*, 555 U.S. at p. 140; *Leon, supra*, 468 U.S. at p. 907.)

Defendant also contends that the stop was unlawful under *Hernandez*, which found a stop unconstitutional because the officer relied solely on his generalized experience that temporary permits were often invalid. (*Hernandez, supra*, 45 Cal.4th at pp. 297–299.) However, *Hernandez* is distinguishable. Unlike the officer in *Hernandez*, Officer Camigi initiated the stop only after dispatch returned a "not on file" result on the observed temporary paper license plate. Officer Camigi testified that he could not initially discern that the paper license plate was issued from Texas from his own vehicle, and the absence of any registration match in local records supported a reasonable inference of noncompliance. This stop was based on a specific, albeit mistaken, irregularity rather than a generalized belief. Reversal is not warranted in this case.

Defendant further argues Officer Camigi's belief that the temporary plate was an invalid California plate was an objectively unreasonable mistake and thus cannot support reasonable suspicion. However, the Fourth Amendment requires only a particularized and objective basis for suspicion, not absolute infallibility. (*United States v. Sokolow* (1989) 490 U.S. 1, 7, 11 [104 L.Ed.2d 1] ["The reasonableness of the officer's decision to stop a suspect

8

does not turn on the availability of less intrusive investigatory techniques"].) The case at hand is analogous to *People v. Greenwood* (2010) 189 Cal.App.4th 742. There, the officer observed a temporary operating permit in the rear window but initiated a stop based on a Department of Motor Vehicles report showing that the vehicle's registration expired in 2007. (*Greenwood, supra*, 189 Cal.App.4th at pp. 744–745.) The officer mistakenly believed that temporary operating permits were limited to smog-check purposes. The court found that the stop was justified solely by the objective inconsistency between the visible permit and department records. (*Id.* at pp. 748–750.) The court emphasized that ambiguity in registration status, even when later resolved, may supply reasonable suspicion sufficient to support a brief detention. (*Id.* at p. 750.)

Similarly, in *People v. Dotson* (2009) 179 Cal.App.4th 1045 (*Dotson*), the officer stopped a vehicle for lacking both front and rear license plates without first confirming whether a temporary permit was displayed. At the suppression hearing, the officer testified that he did not recall whether he looked for a temporary permit in the rear window or whether one was present. (*Dotson, supra*, 179 Cal.App.4th at pp. 1049, 1051.) The Court of Appeal upheld the stop, rejecting the notion that officers must first search for potentially exonerating facts before detaining a vehicle.[3] (*Id.* at pp. 1051–1052.) As in *Greenwood* and *Dotson*, the officer here encountered ambiguous facts that reasonably called for investigation. Officer Camigi observed a

---

[3] The defendant in *Dotson* testified at trial that he "displayed a 'red sticker' in his rear window" and claimed that because he displayed a valid registration, there was no reasonable suspicion for the stop. (*Dotson, supra*, 179 Cal.App.4th at p. 1051.) The appellate court agreed with the People that the defendant's trial testimony was immaterial to the issue of whether the suppression motion was properly denied. (*Id.* at p. 1051, fn. 1.)

temporary plate that appeared irregular and received a "not on file" response from dispatch—circumstances that, though later explained, provided a particularized and objective basis to support this brief investigatory stop.

## DISPOSITION

The judgment is affirmed.


Jackson, P. J.

WE CONCUR:

Simons, J.
Chou, J.

A169855/*People v. Irving Babe Fuimaono*